**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| JAMIE KENNEDY, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | )   CIVIL CASE NO. 4:21-CV-333 |
| LLOYD J. AUSTIN III, | ) |
| Secretary of Defense, as Head of the | ) |
| Department of Defense, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

COMES NOW the Plaintiff, JAMIE KENNEDY, and files her response in opposition to the Defendant's Motion to Dismiss (Doc. 46) the Third Amended Complaint (Doc. 45), showing as follows:

**I. Racial Discrimination Claim Based on Disparate Treatment**

a. Kennedy has sufficiently alleged Redman as a "similarly situated comparator."

In its motion, the Defendant asserts that because Kennedy and Redman engaged in different conduct during their interaction on December 16, 2020, Redman is not "similarly situated" and is therefore precluded as a comparator. In support of this assertion, the Defendant assumes the good faith of Pennington and Dunk in their investigation of the December 16, 2020, incident, their accusations against Kennedy, and the employment actions taken against her based on those accusations. However, the manner in which Pennington and Dunk investigated

Redman's accusations is itself at issue, bearing both on the question of a valid comparator as well as on the issue of pretext.  Specifically, the Defendant's reliance on demonstrably false accusations against Kennedy renders its comparator analysis faulty and demonstrates the need for a full factual development of this case beyond the motion to dismiss stage.[1]  "Determining whether a plaintiff and comparator are 'similarly situated in all material aspects' is a fact-intensive inquiry better suited to summary judgment."  *Alvarez v. Lakeland Area Mass Transit District*, 406 F.Supp.3d 1348, 1354 (M.D. Fla. Aug. 30, 2019).

The instant action presents a unique fact pattern involving an unusual inversion of the usual comparator analysis due to the presence of a video-audio recording of the Plaintiff and alleged comparator showing their respective conduct in a mutual altercation.  In other cases analyzing the conduct of employees in a mutual altercation, courts have weighed the respective

---

[1]  The Defendant states that Kennedy's claim of a "'demonstrably false accusation' . . . goes beyond what may be plausibly inferred from the facts contained in the Third Amended Complaint."  (Doc. 46, fn. 4)  The Defendant then proceeds to speculate as to the contents of the Recording and whether other portions containing the alleged racial epithet were omitted or went unrecorded, even going so far as to state that "Kennedy's supervisors were not required to exclude the possibility that the racial epithet was uttered before the recording began."  Id.

The Third Amended Complaint leaves little room for such speculation, firstly from the Recording itself which shows repeatedly that Redman's accusation stems from Kennedy saying "Pardon me" while walking around Redman.  (Doc. 45,  § 41)  Pennington and Dunk could hardly be expected to seek out another possible time for the epithet when Redman's own recorded actions and words indicate exactly *when* the epithet is alleged to have been uttered.

Moreover, Redman makes the accusation against Kennedy in the receiving office, and then immediately "reported to [Hope] Joseph that Kennedy had called Redman a 'nigger.'"  (Doc. 45 § 46)  Redman did not immediately report to Joseph after Kennedy and Redman's earlier unrecorded interaction, but only after the recorded interaction in the receiving office, in which Redman is recorded making the accusation.  In addition, the Third Amended Complaint makes clear that the recording begins at least fifteen seconds before Kennedy reaches the receiving office doorway, where the exchange between Kennedy and Redman begins.  (Doc. 45 fn. 2)

Finally, both Pennington and Dunk admitted they did not hear Kennedy call Redman a racial slur in the Recording, and the Complaint contains no allegation that either ever attempted to justify her actions against Kennedy on the basis of a belief that the epithet was uttered outside of the interaction capture by the Recording.  (Doc. 45, ¶ 48)  The plausible inference from all of the allegations in the Complaint, then, is that Pennington and Dunk accepted the Recording as capturing the interaction during which the epithet was alleged to have been uttered, but chose to ignore it as evidence.  Hence, Kennedy's conclusion of a "demonstrably false accusation" may be plausibly inferred based on the allegations contained in the Complaint.

actions of the Plaintiff-employee and comparator in determining whether the alleged comparator is valid.

For example, in *Bailey v. S. Jersey Port Corp.*, No. 19-12316, 2020 U.S. Dist. LEXIS 176234 (D.N.J. Sep. 23, 2020) an African-American plaintiff claimed that his alleged comparator called him the "n-word" and thus was equally culpable in initiating a physical confrontation for which the plaintiff was terminated, while the alleged comparator was not terminated.  The court, at summary judgment, was able to weigh the allegation of a racial slur against the plaintiff's lack of evidence for that allegation in determining that the alleged comparator was not a similarly situated employee. Id. at *9  The court observed that the "[alleged comparator] was not similarly situated to [plaintiff] based on the evidence provided. [The alleged comparator] was a part of this altercation, but none of the witnesses states that he was the aggressor . . . in this incident." Id.[2]

In this circuit, many cases involving a mutual altercation similarly turn on the fact that the Plaintiff's conduct during the altercation was more serious than the alleged comparator's, rendering that comparator invalid.  See, e.g. *Roberts v. Gulf Distrib. Holdings, LLC*, No. 1:21-CV-00299-TFM-C, 2022 U.S. Dist. LEXIS 161693, at *32 (S.D. Ala. Sep. 7, 2022); *Smelter v. S. Home Care Servs.*, 904 F.3d 1276, 1292 (11th Cir. 2018); *Floyd v. Fed. Express Corp.*, 423 F. App'x 924, 930 (11th Cir. 2011); *Hendrix v. Ciox Health*, No. 1:18-CV-1224-SCJ-JSA, 2019 U.S. Dist. LEXIS 249762, at *43 (N.D. Ga. Nov. 12, 2019).

However, Kennedy would argue based on the foregoing "aggressor" analysis that she has actually *exceeded* her burden to sufficiently allege a similarly situated comparator.  Indeed, Kennedy and Redman's conduct can only be said to "differ" in the most technical sense because in this case, in an odd contrast to almost all examples in case-law involving mutual altercations,

---

[2] Kennedy is mindful that the cited cases present a factual inversion of her own case yet are nevertheless useful in illustrating a court's analytical approach to two employees' respective conduct in a mutual altercation.

it is the comparator that engaged in misconduct, and not the Plaintiff.[3]  Redman was recorded shouting, using profanity, hurling false accusations, and engaging in threats, yet she received no discipline in any form for her actions.  Kennedy did not act inappropriately at all and yet she was punished.[4]  The disparate treatment between the two could not be more stark.

More importantly, as a matter of policy, the Defendant should not be permitted to conduct a sham investigation, concoct "misconduct" by which to punish the Plaintiff, and then escape liability by asserting that another employee is not a proper comparator because that other employee did not engage in similar "misconduct."

b.  Kennedy has alleged sufficient facts to support a reasonable inference of disparate treatment under the "convincing mosaic" method.

However, even if Kennedy has not pleaded a suitable comparator through the allegations in her third amended Complaint, this does not necessitate dismissal of her claim: "[A] *prima facie* case of disparate treatment does not always depend on the existence of a similarly situated comparator" and can be established instead by the "convincing mosaic" method.  *Baines v. City of Atlanta, Georgia*, 2020 WL 10058116, at *6 (N.D. Ga. March 10, 2020).  A "convincing mosaic" may be shown by evidence that demonstrates, among other things, (1) "suspicious timing, ambiguous statements . . . and other bits and pieces from which an inference of discriminatory intent might be drawn," (2) systematically better treatment of similarly situated

---

[3] One of the rare instances in case-law in which the Plaintiff is alleged to have been the non-aggressor in a mutual altercation can be found in *Anderson v. Brunswick Corp.,* No. 3:11-cv-910-J-37JBT, 2013 U.S. Dist. LEXIS 78246, at *8-10 (M.D. Fla. June 4, 2013).  The court found, in what Kennedy's view is a cramped, too-technical application of the comparator "same or similar conduct" criteria, that in a mutual altercation setting, aggressors can only be compared to aggressors and non-aggressors to other non-aggressors.  However, the court in *Anderson* also found that, even if the two alleged comparators in that case were "similarly situated," neither was treated more favorably than the Plaintiff, unlike in the instant action.

[4] The pretextual nature of the charge for surreptitious recording is discussed *infra*.

employees, and (3) that the employer's justification is pretextual.  *Lewis v. City of Union City*, 934 F.3d 1169 (11th Cir. 2019) (quoting *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011).

Kennedy can easily establish a *prima facie* case of disparate treatment by a "convincing mosaic" based on the allegations made in her complaint.

Firstly, both Redman and Pennington had in the past made denigrating or prejudicial comments about Caucasians.  (Doc. 45 ¶¶ 20-21)  Both Pennington and Dunk were made aware of Redman's harassment of Kennedy for months prior to December 16, 2020, but chose not to act to protect Kennedy, nor was any disciplinary action taken against Redman for conduct to which Redman admitted, including calling Kennedy a "motherfucking bitch."  (Id. ¶¶ 25-35)

The December 16, 2020, incident itself, Pennington's and Dunk's dismissal of Kennedy's exculpatory evidence, and a comparison of how Pennington and Dunk treated Kennedy versus Redman in light of their recorded interaction, plausibly suggests racially-motivated disparate treatment.  The recording shows Redman cursing at Kennedy, threatening Kennedy, and falsely accusing Kennedy of having called her a racial slur. Doc. 45 ¶ 41)  Kennedy does not curse at Redman, does not threaten Redman, and does not call Redman a racial slur.  Id.  Pennington, Dunk, and Cobb all viewed the video and not one of them heard Kennedy use a racial slur toward Redman.  (Id. ¶¶ 45, 48)  Despite the video evidence showing Redman as the aggressor and Kennedy as innocent of using a racial slur, Pennington and Dunk nevertheless proceeded with placing Kennedy on evening shift subject to a "No-Contact Order" ("NCO") and then, later, proposed to punish Kennedy with suspension on the grounds that Kennedy had called Redman a racial slur, racially harassed Redman, and surreptitiously recorded their interaction.  (Id. ¶¶ 48-59)  Meanwhile, Pennington and Dunk pursued no disciplinary action of any kind for

Redman's recorded misconduct.  (Id. ¶ 60)  While Kennedy was forced to languish like a pariah on evening shift for almost two years, saddled with the false accusation of having used a racial slur, a slur which is uniquely offensive coming from a Caucasian, Redman was free of all consequences.

In addition, the only arguably legitimate ground for disciplinary action, the surreptitious recording of Redman by Kennedy, is purely pretextual.  To seek to punish someone who, by the Defendant's inaction in the face of complaints of harassment, was forced to record her harasser in the act of harassing her, including capturing her harasser, in real time, fabricating a pernicious accusation against her, is the very definition of pretext.  The Defendant had a basis for disciplinary action on a *technical* violation of policy but, in pursuing that disciplinary action, had at the same time to abandon all sense of justice, fairness, and even Kennedy's right to protect herself.  No one who was not already looking for a reason to punish Kennedy and to spare Redman would have blamed Kennedy for recording her interaction with Redman.

It is therefore apparent that, even if Kennedy cannot establish a comparator due to her and Redman's differing conduct on December 16, 2020, Kennedy's complaint is on firm ground in demonstrating a "convincing mosaic" showing discriminatory treatment.

## II.  Title VII Protections Against False Accusations

The Defendant cites several cases in support of the assertion that Title VII does not protect an employee from wrongful accusations of using a racial slur toward someone else. (Doc. 46, pp. 15-16)  However, none of these cases deal with the use of a racial slur, but rather accusations of racism.  As such, the holdings in these cases that being "falsely accused of being 'racist,' rather than because of the employee's own race, do not suffice to constitute 'race

discrimination," are inapposite.  (See Doc. 46 p. 16, quoting *Ledda v. St. John Neumann Regional Academy*, No. 20-CV-700, 2021 WL 1035106 at *5 (M.D. Pa. 2021)).

Kennedy was not accused of being racist,[5] an accusation that can be lodged at anyone, regardless of their race; she was accused of using a specific racial slur, unlike any of the plaintiffs in the cases cited.  Moreover, this racial slur is one that, when used by a Caucasian toward an African-American, carries a greater weight and offensiveness than if used by any other racial group.  Therefore, it is entirely "because of [Kennedy's] own race" that this false accusation, and the employment actions that flowed from it, are so grave and damaging.

### III.  Kennedy is Not Raising a Claim Under 42 § U.S.C. 1981

Case-law is clear that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment."  See *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976).  In addition, Kennedy, in her third amended complaint, cites 42 U.S.C. 1981a in support of her claim for compensatory damages.  (Doc. 45, p. 15)

42 U.S.C. 1981a(1) states:

> In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C. 2000e-5, 2000e-16] against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) . . . *and provided that the complaining party cannot recover under section 1981 of this title*, the complaining party may recover compensatory damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent. (Emphasis added)

---

[5] Kennedy acknowledges Redman's prior accusation of Kennedy as being racist on July 16, 2020.  Doc. 45 ¶ 26.  However, this accusation is not related to the Defendant's employment actions against Kennedy, but rather stands as evidence of Redman's prior harassment of Kennedy and Redman's predilection for lodging false character attacks against her.  These past interactions help to explain why Kennedy chose to record her interaction with Redman on December 16, 2020.

Kennedy cited 42 U.S.C. 1981a precisely because, as a federal employee, she is precluded from recovering under 42 § U.S.C. 1981.  To the extent the language in the third amended complaint may be ambiguous or open itself to the interpretation that Kennedy is pursuing a disparate treatment claim under U.S.C. § 1981, that is not her intention.  Kennedy is seeking her claim solely under Title VII, her "exclusive judicial remedy."

## **CONCLUSION**

For the foregoing reasons, Kennedy respectfully requests that this Court find that she has met her pleading burden and enter an order denying the Defendant's Motion to Dismiss.

Respectfully submitted this 21st day of July, 2023.

/s/ Scott G. Reddock
SCOTT G. REDDOCK
Georgia Bar No. 476162

/s/ Katie S. Mitchell
KATIE S. MITCHELL
Georgia Bar No. 106088
Attorneys for the Plaintiff
111 West Court St.
Hinesville, GA 31313
Phone (912) 332-7077
Facsimile (912) 332-7179

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served all parties including opposing counsel listed below in this case with the foregoing pleading in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this Court:

Bradford Patrick
Assistant United States Attorney

Respectfully submitted this 21st day of July 2023.

/s/ Scott G. Reddock
Scott G. Reddock
Georgia Bar No. 476162